IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**RONALD POWELL,**
**Claimant Below, Petitioner**

**FILED**
**February 8, 2024**
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-340**       (JCN: 2022016561)

**HANCOCK COUNTY BOARD OF EDUCATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Ronald Powell appeals the June 14, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Hancock County Board of Education ("Hancock County BOE") timely filed a response.[1] Mr. Powell did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which rejected the claim for compensability of COVID-19.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Powell, a bus driver for Hancock County BOE, completed an Employees' and Physicians' Report of Occupational Injury or Disease and contended that he had developed COVID-19 with a date of last exposure of August 18, 2021.[2] Mr. Powell alleged below, and argues here on appeal, that he was exposed to and contracted the COVID-19 virus at mandatory meetings he attended for his employment which were held on August 18, 2021, and August 19, 2021. Mr. Powell contacted his primary care physician, Saieed Saieed, M.D., on August 24, 2021, and reported that he had developed symptoms of fever, cough, sore throat, and tightness in his chest, which had started approximately three to four days prior. Mr. Powell was admitted to the hospital to treat his COVID-19 symptoms from August 31, 2021, through September 17, 2021.

---

[1] Mr. Powell is represented by Rebecca A. Roush, Esq. Hancock County BOE is represented by Maureen Kowalski, Esq.

[2] Although this report was not included in the appendix record on appeal, it was noted in the Board's order and medical records.

On October 4, 2021, Kelly Bush, FNP, completed an attending physician's statement in which she noted Mr. Powell's period of hospitalization due to COVID-19, pneumonia, and respiratory failure and certified that he was totally disabled from August 25, 2021, through October 5, 2021. Ms. Bush indicated that Mr. Powell's condition was not work related and stated that he could return to work without restrictions on October 5, 2021.

By order dated December 17, 2021, the claim administrator rejected the claim based upon a finding that an injury did not occur in the course of and resulting from Mr. Powell's employment. Mr. Powell protested the order to the Board. In the ensuing litigation, Hancock County BOE submitted scientific articles on the incubation period of COVID-19 and West Virginia's response to COVID-19.

On June 10, 2022, Mr. Powell testified via deposition. Mr. Powell repeatedly claimed that he had suffered memory loss as a result of COVID-19 and could not remember dates, including when he began exhibiting symptoms of the virus, when he sought treatment, or even his date of last exposure. Mr. Powell also could not recall whether he picked up food from a restaurant, entered a grocery store, or purchased gas in the three weeks leading up to his testing positive for COVID-19. However, Mr. Powell stated that he was a "germaphobe" and took all necessary precautions, such as wearing a mask and gloves, to avoid exposure to the virus in the summer of 2021. Mr. Powell testified that he attended two mandatory meetings held by Hancock County BOE and that he was shocked that masks and social distancing were not required and did not occur. Mr. Powell stated that it was reported on the news that a COVID-19 outbreak occurred at the Hancock County bus garage, and Mr. Powell attributed his contracting the virus to attending the two mandatory meetings.

Chris Enochs, Director of Supplemental Services for Hancock County BOE, testified via deposition on July 12, 2022. Mr. Enochs testified that he was Mr. Powell's direct supervisor, and that Mr. Powell would have been required to attend two meetings for personnel on August 18, 2021, and August 19, 2021. Mr. Enochs stated that masks were not required for either meeting, but he did promote social distancing at the August 18, 2021, meeting. Mr. Enochs noted that he was not in charge of the August 19, 2021, meeting and there was not as much social distancing at that meeting. Mr. Enochs testified that an outbreak of COVID-19 cases was declared at the bus garage at some point following the beginning of the 2021–2022 school year and that Mr. Powell was included in that group.

On September 20, 2022, Mr. Powell underwent an independent medical evaluation ("IME") performed by Jennifer Lultschik, M.D. Mr. Powell reported that he could not recall any dates or details around the time prior to, during, and soon after his COVID-19 illness, stating he had memory loss which he attributed to the virus. After conducting a physical examination of Mr. Powell and a review of his medical records, Dr. Lultschik opined that Mr. Powell's ongoing symptoms were unrelated to his COVID-19 diagnosis.

2

She also opined that Mr. Powell did not contract COVID-19 in the course of and resulting from his employment. Dr. Lultschik noted that Mr. Powell sent a message to Dr. Saieed on August 24, 2021, in which he stated that he had been exhibiting symptoms for the past three to four days. Dr. Lultschik stated that timeline placed the onset of Mr. Powell's symptoms on August 20, 2021, or August 21, 2021. According to Dr. Lultschik, the predominant variant of COVID-19 at that time was the Delta variant, which had an incubation period of four to five days. As such, if Mr. Powell had become symptomatic on August 20, 2021, or August 21, 2021, Dr. Lultschik opined that he would have contracted the virus between August 15, 2021, and August 17, 2021. Given the foregoing, Dr. Lultschik stated that it was more likely than not that Mr. Powell had been infected prior to the mandatory meetings he attended as part of his employment and that his COVID-19 diagnosis was unrelated to his employment.

On January 19, 2023, J. Lynn Prosser, DNP, authored correspondence in which she opined that Mr. Powell's "Covid exposure and illness that resulted in hospitalization arose out of and occurred during Mr. Powell's employment making this an occupational illness/disease that should be covered by Workman Compensation." In an e-mail dated March 1, 2023, Ms. Prosser explained, "I wrote the letter [based] on what [Mr. Powell] told me and my thoughts on the situation" and stated that she never examined Mr. Powell.

By order dated June 14, 2023, the Board affirmed the claim administrator's order rejecting the claim. The Board held that COVID-19 is an ordinary disease of life to which the general public is exposed outside of employment and, therefore, in order for the virus to be held compensable as an occupational disease, a claimant must establish the factors set forth in West Virginia Code § 23-4-1(f) (2021).[3] The Board further noted this Court's recent holding in *PrimeCare Medical of WV, Inc. v. Foster*, 247 W. Va. 590, 885 S.E.2d 171 (Ct. App. 2023), in which we stated that COVID-19 "is generally not compensable, as it is a disease of ordinary life, unless the six factors contained in [West Virginia Code] § 23-4-1(f) are met."

---

[3] West Virginia Code § 23-4-1(f) sets forth the following six factors:

(1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of employer and employee; and (6) that it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction[.]

In analyzing the evidence before it, the Board determined that Mr. Powell failed to establish that his COVID-19 diagnosis was compensable pursuant to West Virginia Code § 23-4-1(f). The Board found that while Mr. Powell had been diagnosed with COVID-19 after attending two employer-mandated meetings, Dr. Lultschik and Ms. Bush both opined that the virus was not related to Mr. Powell's employment. The Board noted that Dr. Lultschik and Ms. Bush were the only two medical providers to perform a physical examination of Mr. Powell, and that Ms. Prosser, who opined that Mr. Powell's COVID-19 diagnosis was work-related, had not examined Mr. Powell or reviewed his medical records and based her decision solely on what Mr. Powell told her. The Board concluded that the opinions of Dr. Lultschik and Ms. Bush were more persuasive than the opinion of Ms. Prosser and that, based upon the weight of the medical evidence, Mr. Powell failed to establish a direct causal connection between his employment and his COVID-19 diagnosis.

The Board also found that Mr. Powell failed to meet factor four of West Virginia Code § 23-4-1(f) and to demonstrate that his COVID-19 diagnosis did not come from a hazard to which he was equally exposed outside of employment. The Board noted the articles submitted by Hancock County BOE, which indicated that a significant surge in COVID-19 cases occurred from approximately July 22, 2021, through September 10, 2021, with cases doubling statewide around the time Mr. Powell was diagnosed. The Board found that the articles indicated that West Virginia had the highest rate of acceleration of new COVID-19 cases in the country during the time in question. As such, the Board concluded that the outbreak of COVID-19 cases that spread through the Hancock County bus garage coincided with a significant surge in the spread of the virus within the public at large and further found that it could not be presumed that the outbreak in the bus garage originated at the mandatory meetings held on August 18, 2021, and August 19, 2021.

Lastly, the Board found that Mr. Powell failed to establish that his illness was incidental to the character of the business as set forth in factor five of West Virginia Code § 23-4-1(f). The Board concluded that COVID-19 was not unique or peculiar to Mr. Powell's job as a school bus driver and, as such, was not incidental to the character of his occupation. For the foregoing reasons, the Board affirmed the claim administrator's rejection of the claim. Mr. Powell now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;

4

(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Mr. Powell argues that the Board erred in affirming the claim administrator's order rejecting the claim. First, Mr. Powell argues that the Board erred in rejecting his claim without first considering whether his COVID-19 diagnosis met the requirements to establish an occupational injury, rather than an occupational disease. According to Mr. Powell, occupational disease laws are designed to cover work-related conditions such as occupational pneumoconiosis, occupational cancers, hearing loss, and carpal tunnel syndrome, and that COVID-19 is simply not the type of disease that West Virginia Code § 23-4-1(f) was intended to cover. Mr. Powell contends that the statute applies to diseases that are cumulative or which develop gradually.

Mr. Powell contends that, in cases such as his, a disease that is attributable to a definite, isolated, fortuitous occurrence and was contracted in the course of and resulting from employment should be held compensable. *See Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 799, 172 S.E.2d 698, 700 (1970) (citing *Jones v. Rinehart & Dennis Co.*, 113 W. Va. 414, 168 S.E. 482 (1933)). Mr. Powell argues that he was obviously exposed to COVID-19 at the employer-mandated meetings, which were isolated fortuitous events. Mr. Powell concludes that "any reasonable person utilizing common sense can link [his] development of COVID-19 to the widespread outbreak that affected seven employees that attended the same meeting . . . ." Because he developed an injury as a result of a single isolated fortuitous event, Mr. Powell concludes that he has met a prima facie case for a compensable claim for COVID-19.

Second, Mr. Powell argues that, alternatively, the Board erred in finding that he failed to meet the statutory criteria for an occupational disease pursuant to West Virginia Code § 23-4-1(f). Mr. Powell contends that the six factors set forth in West Virginia Code § 23-4-1(f) essentially deal with causation, and that the evidence demonstrated that he developed COVID-19 following his attendance at two mandatory meetings. Mr. Powell contends that, if he had not attended these meetings, he would not have been exposed to other employees who were contagious with the virus. Mr. Powell argues that because he can identify the specific event and job duties (attending the meetings) that resulted in his exposure, that he has established causation sufficient to overcome the disease of ordinary life exception, and thus his claim should have been held compensable.

Upon review, we find that Mr. Powell failed to demonstrate that the Board's findings and conclusions were clearly wrong. At the outset, we dispense with Mr. Powell's argument that his claim should have been analyzed as an occupational injury rather than an occupational disease. As we held in *PrimeCare Medical of WV, Inc. v. Foster*, 247 W. Va. 590, 885 S.E.2d 171 (Ct. App. 2023), COVID-19 is a disease of ordinary life. Pursuant to West Virginia Code § 23-4-1(f), a disease of ordinary life to which the general public is exposed outside of employment cannot be held compensable, except when it follows as an incident of occupational disease. *Id.* To establish that a disease of ordinary life followed as an incident of occupational disease, the six factors set forth in West Virginia Code § 23-4-1(f) must be met. *Id.* This language makes clear that workers' compensation claims for COVID-19 are to be addressed as an occupational disease rather than an occupational injury. To the extent that Mr. Powell suggests that we erred in our analysis in *PrimeCare*, we find that he has failed to establish error, and we decline to reconsider our holding as Mr. Powell suggests. Because the language in *PrimeCare* is clear that claims for COVID-19 must be analyzed as an occupational disease, we find no merit in Mr. Powell's argument that his claim should have been analyzed as an occupational injury.

We likewise find no merit in Mr. Powell's argument that the Board clearly erred in finding that he failed to meet the six factors for occupational disease as set forth in West Virginia Code § 23-4-1(f). Here, the Board's decision clearly analyzed the six-factor test and found that Mr. Powell failed to demonstrate that there was a causal connection between his employment and his COVID-19 diagnosis, that his COVID-19 diagnosis was a hazard to which he was equally exposed outside of his employment, or that his illness was incidental to the character of the business. The evidence of record supports such conclusions.

As noted by the Board, Dr. Lultschik and Ms. Bush, the only providers to physically examine Mr. Powell, both opined that Mr. Powell's COVID-19 diagnosis was not related to his occupation. Indeed, scientific articles submitted into evidence demonstrated that a significant surge of cases occurred statewide during the timeframe in question, with West Virginia having the highest acceleration rate of new COVID-19 cases in the country during that time. Given that the outbreak at the Hancock County bus garage coincided with the significant surge within the community at large, the Board concluded that it could not be presumed that Mr. Powell contracted COVID-19 at the mandatory meetings. Lastly, there is nothing to suggest that COVID-19 is unique to or incidental to the character of Mr. Powell's employment as a bus driver. As Mr. Powell failed to establish these factors, further analysis of the other factors is unwarranted, and his failure to establish these factors is fatal to his claim.

Accordingly, we affirm the Board's June 14, 2023, order.

Affirmed.

6

**ISSUED:** February 8, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

7